**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**KLOSTER CRUISE LIMITED,**
Defendant.

No. 93–2465.

United States District Court,
S.D. Florida,
Miami Division.

July 2, 1995.

Carla J. Vogel, Equal Opportunity Commission, Miami, FL, for plaintiff.

Stephen M. Corse, Carlos B. Castillo, White & Case, Miami, FL, for defendant.

### ORDER

K. MICHAEL MOORE, District Judge:

Former outside salespersons claim that their employer laid them off on account of their age. In evaluating this claim, the Court must decide whether certain alleged irregularities in sales goals, performance appraisals and termination forms create an inference of discrimination.

### I. Factual background [1]

Defendant Kloster Cruise Limited ("Kloster Cruise") is a Bermuda subsidiary of a Norwegian parent corporation. In addition to its overseas operations, Kloster Cruise maintains offices in the United States. Kloster Cruise operates the Royal Viking Line and Norwegian Cruise Line fleets of cruise ships.

Joseph Burger, Hela Campbell, Renato Ferreira, Kathy Hayes and Edward Wilcoxson, all United States citizens over the age of 40, worked in Kloster Cruise's shoreside offices as district sales managers (collectively, the "DSMs"). Their duties consisted of outside sales in which they sold space on Royal Cruise Line and Norwegian Cruise Line. Each of the DSMs was supervised by a regional director. Regional directors, in turn, reported to Michael Conroy, Kloster Cruise's vice president of sales. Conroy's boss was Douglas Falk, executive vice president of marketing and sales.

Kloster Cruise experienced severe financial problems in 1990. Because of these difficulties, the company's board of directors directed management to implement a reduction in force in the shoreside work force. The task of laying off district sales managers fell to Conroy. In December 1990, Falk instructed Conroy to eliminate as many employees as possible without disrupting sales [2] and gave Conroy five days or less to pick people to let go [3]. Conroy chose Burger, Campbell and Wilcoxson to be among those he recommended to Falk for termination.

Falk accepted this recommendation and discharged these three DSMs on January 18, 1991 during a reduction in force. A total of 86 employees were let go at this time.

Kloster Cruise's financial problems continued through 1991 [4], necessitating another round of cutbacks.[5] Conroy again received word that he should reduce staff wherever a

---

1. The following facts are undisputed.

2. Conroy dep. at 104, 106.

3. *Id.* at 106–08.

4. Falk dep. at 90.

5. Conroy dep. at 237.

termination would not disrupt sales. He also was instructed that salespeople who were not "going to be able to perform" should be let go during the layoff.[6]

Conroy subsequently recommended to Falk that Ferreira and Hayes be terminated. Falk agreed, so both of these DSMs were terminated on December 6, 1991 during Kloster Cruise's second reduction in force. A total of 47 employees were discharged at this time, bringing the total to 133—12.5% of Kloster Cruise's shoreside workforce.

Believing that the DSMs had been terminated because of their age, the United States Equal Employment Opportunity Commission ("EEOC") filed suit against Kloster Cruise on their behalf. The EEOC's complaint contends that the terminations violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634.

The parties filed cross motions for final summary judgment on the merits of the DSMs' claims. United States Magistrate Judge William C. Turnoff issued a Report and Recommendation recommending that this Court grant Kloster Cruise's motion and deny the EEOC's cross motion. The EEOC filed timely objections to the Report and Recommendation. The Court takes up the Report and Recommendation and the EEOC's objections at this time.

## II. Discussion

### A. Standards for summary judgment

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To obtain summary judgment, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

■ In assessing whether the movant has met this burden, the Court views the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* The party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Id.* at 160, 90 S.Ct. at 1609–10. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the nonmoving party has introduced no evidence whatsoever. *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368–69 (11th Cir.1982).

### B. Discrimination claims

■ A plaintiff can make a prima facie case of age discrimination through three separate means: (1) by direct evidence of discriminatory intent; (2) by statistical proof of a pattern and practice of discrimination; and (3) by use of the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir.), *cert. denied*, 493 U.S. 1064, 110 S.Ct. 884, 107 L.Ed.2d 1012 (1990). The EEOC has failed to present sufficient direct evidence of discriminatory intent to raise a genuine issue of material fact[7], and it concedes that it lacks statistical proof of a pattern and practice of discrimination.

■ The EEOC thus is left with the *McDonnell Douglas* burden-shifting approach. In the context of a reduction in force, this approach requires the EEOC to adduce evidence that (1) shows that each DSM was between 40 and 70 years of age when terminated from employment, (2) dem-

---

**6.** *Id.*

**7.** The EEOC claims that a certain comment that Falk allegedly made at a cocktail party in 1989 constitutes direct evidence of an intent to discriminate on the basis of age. Adopting in full

the reasoning of the Report and Recommendation on this contention, the Court finds Falk's comment to be legally insufficient to raise a triable issue of fact.

onstrates that each DSM was qualified for another outside sales position at the time of termination, and (3) permits a jury to conclude that Kloster Cruise intended to discriminate on the basis of age when terminating each DSM. *Id.* at 1046–47.

If the EEOC makes out a prima facie case, the burden shifts to Kloster Cruise to articulate a legitimate, nondiscriminatory reason for terminating each DSM. *Id.* at 1045. If Kloster Cruise meets this obligation, the burden shifts back to the EEOC to prove that Kloster Cruise's asserted reasons for discharging the DSMs are mere pretext for discrimination. *Id.*

### 1. The EEOC's prima facie case

█ It is undisputed that all of the DSMs were between 40 and 70 years of age when they were terminated. Further, because all had worked in outside sales for two or more years, it is presumed that they were qualified to work in similar outside sales positions after Kloster Cruise's reductions in force. *Young v. General Foods Corp.*, 840 F.2d 825, 829–30 n. 3 (11th Cir.), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). The EEOC thus has satisfied the first two requirements of the prima facie case.

█ It also has satisfied the third. Kloster Cruise retained younger salespeople to cover the DSMs' former sales territories. Two district sales managers, ages 35 and 27, divided up Burger's territory. A 44–year-old district sales manager who was seven years younger than Campbell assumed Campbell's territory. Ferreira's territory went to another district sales manager who was 39 years of age. A 39–year–old employee took over Wilcoxson's territory after she was promoted to district sales manager in March 1991. Finally, two new hires, both age 33, assumed Hayes' territory when they started work in March and April 1992.

Kloster Cruise's retention of younger salespeople to handle the DSMs' former territories permits a sufficient inference of discrimination to fulfill the requirements of a prima facie case. *Branson v. Price River Coal Co.,*

853 F.2d 768, 771 (10th Cir.1988); *Thornbrough v. Columbus & Greenville Rr. Co.,* 760 F.2d 633, 644 (5th Cir.1985). The burden of producing a legitimate, nondiscriminatory rationale for the DSMs' discharge now rests with Kloster Cruise.

### 2. Kloster Cruise's legitimate, nondiscriminatory reasons for terminating the DSMs

█ Kloster Cruise asserts that it terminated each DSM as part of a reduction in force and for poor performance. The Court will consider each DSM individually to determine whether Kloster Cruise has produced evidence in support of this claim.

#### a. Joseph Burger

Michael Conroy filled out a staff reduction form when he selected Burger for termination. This form stated that Burger's "retention value is comparatively lower than that of others within the relevant group who will be retained." Continuing, the form read that Burger's "performance and supervisor's appraisal rate him comparatively lower than others within the area." Finally, the form stated that Burger's "[p]osition will not be retained."

Conroy's deposition testimony supports the staff reduction form's explanation of Burger's termination. Conroy testified that Burger's New Jersey and Pennsylvania territories largely overlapped with the territories of two other salespersons and that the "revenue generation from the section that [Burger] had was substantially less than the revenue generated from the other two areas."[8] Conroy claimed that he eliminated Burger's position and distributed it to the other two salespeople because, of the three individuals, Burger had the weakest sales performance.[9]

Burger's regional director, Joyce Malkenson, made an even more critical assessment of Burger's work. Malkenson testified that Burger was difficult to contact and would not return messages for several days[10]. As Malkenson described it, this conduct was "to-

---

8. Conroy dep. at 141.

9. *Id.* at 145.

10. Malkenson dep. at 31–32, 33–34, 37–38, 81–82.

tally unacceptable" for a salesperson.[11] In addition, Burger allegedly made disparaging remarks to travel agents about Norwegian Cruise Line.[12]

### b. Edward Wilcoxson

Wilcoxson's staff reduction form rated his retention value as comparatively lower than that of others "within the relevant group who will be retained" and noted that his 1990 performance appraisal was marginal. Explaining this later point, the form stated that Wilcoxson's "marginal review was based on a 76% attainment of 1990 goal and performance of basic job functions discussed with employee by regional sales director during 1990."

Wilcoxson's regional director, Diane Nessenson, confirmed the comments on the staff reduction form. According to her, Wilcoxson had the lowest sales in her region.[13] Nessenson gave an underlying reason for Wilcoxson's sales figures: Wilcoxson had a lack of enthusiasm for his job.[14] Wilcoxson blamed others for his failures, did not perform tasks asked of him, and showed no initiative to improve his sales.[15] In addition, travel agents complained weekly about Wilcoxson's unwillingness to work with them.[16] Nessenson also suspected that Wilcoxson gave a free cruise to his wife, a travel agent, when he should have used the cruise for promotional purposes.[17]

### c. Hela Campbell

Campbell's staff reduction form stated that her retention value was lower than others "within the relevant group who will be retained." The form listed her performance as "marginal" in 1990 and explained that this rating was based on her "53% attainment of NCL goal and 69% of RVL goal in 1990" and the fact that her "less than $1 million[ ] in

NCL revenue for this district [was the] lowest in the country."

Consistent with this evaluation, Campbell's regional director, John Downey, testified that Campbell had the worst revenue goal attainment in his region and that her performance had failed to meet his expectations.[18] Her sales reports usually contained inadequate information and often were turned in late.[19] A travel agent once complained to Downey that Campbell did not show for meetings and once came to his office drunk, and Downey received an above-average number of complaints about Campbell from other travel agents.[20]

### d. Kathy Hayes

Hayes' staff reduction form stated that her "performance to revenue goal was below average for the company and her sales expertise is lower than her counterparts who will be retained." The form further commented that her retention value was comparatively low and that her position would be eliminated.

Hayes' regional director, John Downey, identified Hayes as one of the four weakest district sales managers in his region.[21] Downey stated that he received more than an average number of complaints about Hayes and that these complaints concerned her failure to return phone calls, favoritism of selected travel agents, and unresponsiveness to requests.[22] Commenting on this last problem, Downey described Hayes' conduct as "unacceptable."[23]

### e. Renato Ferreira

Ferreira's staff reduction form gave him a comparatively low "retention value" and stated that his "performance to revenue goal was

---

11. *Id.* at 31.

12. *Id.* at 34–35, 82–83.

13. *Id.* at 24, 26.

14. Nessenson dep. at 13, 16.

15. *Id.* at 14–19, 21–22.

16. *Id.* at 14.

17. *Id.* at 17–18.

18. Downey dep. at 152, 180.

19. *Id.* at 152–53.

20. *Id.* at 156, 179.

21. *Id.* at 213.

22. *Id.* at 182–85.

23. *Id.* at 182.

below average for the company and his sales expertise is lower than his counterparts who will be retained." The form also stated that his position would be eliminated.

Ferreira's regional director, Joyce Malkenson, confirmed this dim view of Ferreira's work. Calling his performance "poor," she explained that Ferreira did not make his allotted number of sales calls—he typically would make no more than one call when salespersons were required to make six.[24] Malkenson described Ferreira as unfamiliar with his sales territory, unable to make quotas for group sales, unable to generate sufficient sales to justify his job, prone to giving excuses for nonperformance, and disrespectful of authority.[25] She had placed Ferreira on corrective action because of these deficiencies and had graded his performance in 1990 as "marginal."

### f. Conclusion

Kloster Cruise has adduced evidence that economic adversity forced it to lay off personnel and that it selected each DSM for layoff because of his or her poor performance. This is sufficient to satisfy its burden of production. *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) ("An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate nondiscriminatory reason for termination."); *see also Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548 (11th Cir.1995) (poor work performance legitimate reason for discharge).[26]

### 3. EEOC's showing of pretext

To avoid summary judgment, the EEOC now must introduce "significantly probative evidence" that Kloster Cruise's asserted reasons for terminating the DSMs were merely pretexts for discrimination. *Clark*, 990 F.2d at 1228. The EEOC may establish pretext

"either directly by [producing evidence] that a discriminatory reason more likely motivated [Kloster Cruise] or indirectly by showing that [Kloster Cruise's] proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir.1989). Opting for the latter tack, the EEOC, among other things, seeks to discredit the sources that Conroy allegedly relied upon when selecting the DSMs for termination.

### a. Sales goals data

The EEOC attacks the sales goals Kloster Cruise purportedly used to measure the DSMs' performances. It observes that Kloster Cruise's designated representative was unable to verify whether certain documents Kloster Cruise produced through discovery were the final sales goal figures for each DSM in 1989, 1990 and 1991. Given this, the EEOC suggests that Kloster Cruise has failed to produce admissible evidence that the DSMs did not meet their sales goals[27].

The Court disagrees. At his deposition, Conroy identified several quarterly and year-end reports on district sales managers' sales goals, actual sales, and percentage attainment of goals.[28] He verified that he had reviewed the data contained in these reports when he chose the DSMs for termination[29] and that the DSMs' percentage attainment of goals was a factor he considered in making this decision.[30]

Kloster Cruise thus has produced the key sales goal information that Conroy relied upon to recommend the DSMs for layoff. The EEOC has identified no evidence suggesting that the DSMs' sales performances were better than that described by Conroy or that Kloster Cruise's "final" sales records contained information that is materially different from that identified by Conroy. *See*

---

24. Malkenson dep. at 50.

25. *Id.* at 50–51, 53–54, 63–64.

26. The EEOC has attacked the evidence Kloster Cruise has offered in support of its reasons for discharging the DSMs. Since Kloster Cruise's evidence is credible on its face, the EEOC's contentions are more properly addressed in the following discussion of pretext.

27. EEOC's objections at 4–5, 7; EEOC's memorandum of law in response to defendant's motion for final judgment and in support of its motion for final summary judgment at 16–17.

28. Conroy dep. at 70, 91, 184, 196 and 205.

29. *Id.* at 197, 208–09, 210–15.

30. *Id.* at 191–92, 194, 204.

*Young,* 840 F.2d at 830–31 (no proof of pretext where age discrimination plaintiff failed to submit proof that low sales figures relied upon by defendant were wrong). Kloster Cruise's inability to produce "final" sales records thus is not probative of pretext.

■ The EEOC also complains that Kloster Cruise has not adduced evidence explaining how sales goals were established, and it infers from this that the goals are suspect.[31] This inference is not warranted. First, it is untrue that Kloster Cruise did not explain how it set sales goals. The undisputed record reveals that the company formulated preliminary sales goals based upon historical data[32] and gave them to Conroy. Conroy would then obtain the input of his regional directors and their district sales managers. Afterwards, he would submit revised goals to the company.[33]

Second, it is irrelevant how sales goals were established. So long as the goals were not set in a manner calculated to facilitate age discrimination, it matters not how Kloster Cruise arrived at its sales goals. What is important is only how far short the DSMs fell from these goals.

■ Finally, the EEOC asserts that Kloster Cruise's method for calculating the DSMs' revenue productivity was inaccurate.[34] True or not, this contention is not probative of pretext. "It is ... not a violation of federal employment discrimination laws for an employer to err in assessing the performance of an employee." *Walker,* 53 F.3d at 1564 (Johnson, J., concurring). Even if the DSMs' percentage attainment of revenue goals was not a reliable measure of the DSMs' work, Kloster Cruise did not violate the ADEA by mistakenly relying on these figures. *Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 567 (11th Cir. 1992); *Elrod v. Sears, Roebuck & Co.,* 939

F.2d 1466, 1471 (11th Cir.1991); *Young,* 840 F.2d at 830–31.

### b. Regional directors' evaluations

■ As discussed above, regional directors had specific criticisms of each of the DSMs. The EEOC asserts that Kloster Cruise cannot rely upon these personal assessments of the DSMs' work performance to justify their terminations because Conroy did not seek the regional directors' input at the time he selected the DSMs for layoff.[35]

The EEOC is wrong. True, Conroy selected the DSMs for termination without having first consulted with the regional directors. He has testified, however, that he had obtained their opinions of the DSMs throughout the period that he worked at Kloster Cruise.[36] The regional directors confirmed this representation[37], and the EEOC has proffered no evidence to the contrary.

### c. Conroy's alleged manipulation of performance appraisals

■ The EEOC states that the DSMs' 1990 performance appraisals were a "sham" because Conroy told some of the regional directors to downgrade certain DSMs' performance ratings. The EEOC's evidence on this point consists largely of statements from regional director John Downey. Downey testified that he had rated Hayes "almost fully satisfactory"[38] and two other district sales managers "fully satisfactory"[39] in preliminary versions of their 1990 performance appraisals. When Conroy reviewed these appraisals, he instructed Downey to change the ratings to "marginal."[40] As the EEOC sees it, Conroy's "interference" in the appraisal process in these instances suggests that the DSMs' last performance appraisals—in which all but Burger were scored as

31. EEOC's objections at 4–5, 7.

32. Shawn Tubman dep. at 12, 27.

33. *Id.* at 40–41; Conroy dep. at 33–34.

34. EEOC's objections at 5, 7–8.

35. *Id.* at 6, 8.

36. Conroy dep. at 109, 257–58, 336.

37. Malkenson dep. at 58, 60, 92, 107–10; Nessenson dep. at 25.

38. Downey dep. at 86.

39. *Id.* at 130.

40. *Id.* at 129–30.

marginal—were rigged to set them up for later termination.[41]

The problem with this view is that it was Conroy's job to make the final call on a district sales manager's performance rating. Prior to sending district sales managers their performance reviews, regional directors were first required to confer with Conroy.[42] Conroy signed off on all performance appraisals and had the authority to change a district sales manager's rating.[43] Downey himself testified to this fact, acknowledging that Conroy instituted a policy under which he approved performance appraisals before regional directors gave them to district sales managers.[44] As Downey told it, Conroy also had established a formulaic rating policy which equated specific percentages of revenue goal attainment with specific performance ratings.[45] Because Downey did not agree with this policy, he and Conroy disagreed on how to evaluate the three district sales managers, and Conroy ultimately overruled Downey's assessment.[46]

The EEOC thus has not shown that Conroy "tampered" with otherwise final performance appraisals. Instead, the record demonstrates that, in downgrading appraisals, Conroy exercised his authority to review performance. Somebody had to have the final word on performance appraisals. The fact that it was Conroy cannot raise a triable issue of fact as to pretext.

### d. Omissions from staff reduction forms

The EEOC takes issue with Kloster Cruise's specific criticisms of the DSMs' individuals performances, *see, supra,* section II(B)(2)(a)–(e), pointing out that the DSMs' staff reduction forms omitted these alleged deficiencies in the DSMs' work.[47] The EEOC's explanation for these omissions: Kloster Cruise did not rely on DSMs' specific work problems when it decided to terminate them.

The EEOC is wrong in suggesting that the staff reduction forms ignored the DSMs' specific performance deficiencies. For each DSM, the form stated that his or her "retention value" was less than that of comparable employees. The EEOC gives no explanation why this statement should be narrowly construed so that it does not encompass the several specific performance problems exhibited by the DSMs. More fundamentally, the staff reduction forms confirm that the DSMs had been terminated because of their weak contribution to the company's bottom line. The DSMs' performance problems undoubtedly were important causes of their inability to generate sales revenue.

### e. Hiring of younger district sales managers

The EEOC disputes that the DSMs were let go as part of a reduction in force because Kloster Cruise hired district sales managers soon after the layoffs.[48] Most notably, Hayes' territory, vacated upon Hayes' December 6, 1991 termination, was filled by two district sales managers hired on March 30, 1992 and April 9, 1992.

Kloster Cruise's decision to hire new district sales managers in 1992 does not, by itself, discredit its explanation that it terminated the DSMs as part of reductions in force. In *Clark,* a company laid off an employee during a March 1985 reduction in force. 990 F.2d at 1225. The employee brought suit against the company for retaliation against his exercise of employee benefits rights. In seeking to establish the inference that the discharge was illegally motivated, the employee introduced evidence that the company had hired new workers in October 1985. The Eleventh Circuit rejected this effort. Concluding that the employee had not made out a prima facie case, it held that the company's "decision to hire more workers in October 1985, does not by itself suggest that its decision to reduce the workforce in March 1985 was motivated by discriminatory intent." *Id.*

---

41. EEOC's objections at 11–12, 13.

42. Conroy dep. at 37–38.

43. *Id.* at 148, 276.

44. Downey dep. at 133–34, 137.

45. *Id.* at 76, 85–86, 137, 174–76, 194; Conroy dep. at 90–91.

46. *Id.* at 15–18, 176.

47. EEOC's objections at 8–11, 13.

48. *Id.* at 7, 12.

The record reveals that Conroy received permission to increase his sales force in early 1992 because the previous year's layoffs had helped to stabilize Kloster Cruise's financial status.[49] In addition, Kloster Cruise had discovered that its cutbacks in staff had limited its ability to generate revenue in some territories.[50] It needed to hire new district sales managers to redress this problem.

The EEOC has made no showing that these reasons were not the basis for Kloster Cruise's decision to hire new district sales managers in 1992. Since the EEOC thus is left with only the bare fact of the 1992 hiring, *Clark* makes clear that it has failed to establish pretext.

## III. Conclusion

The EEOC has failed to make a showing of pretext. Accordingly, the EEOC's objections to the Report and Recommendation of United States Magistrate Judge William C. Turnoff are **OVERRULED.** Adopting the Report and Recommendation, the Court **GRANTS** Kloster Cruise's motion for final summary judgment and **DENIES** the EEOC's cross motion for final summary judgment.

---

**49.** Conroy dep. at 278.

**50.** Falk dep. at 95–96.