**Stella KOUNELIS, Plaintiff,**

v.

**MOUNT SINAI MEDICAL CENTER OF GREATER MIAMI, INC.,** **Defendant.**

**No. 96–1038–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Oct. 7, 1997.

Maidenly Sotuyo–Macaluso, Manzini & Associates, Miami, FL, for Plaintiff.

Averill G. Marcus, Averill G. Marcus P.A., Miami, FL, for Defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

.THIS CAUSE came before the Court upon Defendant Mount Sinai Medical Center of Greater Miami, Inc.'s ("Mount Sinai") Motion for Summary Judgment ("Motion") (DE # 21).

UPON CONSIDERATION of the Motion, responses, materials submitted, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order granting Mount Sinai's Motion.

## BACKGROUND [1]

Plaintiff Stella Kounelis ("Kounelis") sues Mount Sinai for alleged violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 *et seq.*

In 1981, at the age of 52 or 53, Kounelis was employed by Mount Sinai as a Personnel Representative II in the human resources department. In 1982, Kounelis was promoted to Benefits Representative II. Kounelis received a pay increase at the time. In 1985,

---

1. Unless otherwise stated, the following facts are undisputed. The Court notes that the task of determining the undisputed facts in this case was made somewhat difficult by Kounelis' failure to fully comply with the procedural requirements for opposing summary judgment. In several instances, Kounelis makes factual allegations without citing to a place in the record where the facts may be verified. For example, in her Statement of Facts, Kounelis cites to the "Davis deposition" or "Rosenfeld deposition" without providing a page or line designation and without providing a copy of the relevant portion of the transcript for the Court's review.

at the age of 56, Kounelis was promoted to Benefits Representative I.

In 1986, Jan Davis ("Davis") became Kounelis' direct supervisor. In August of 1990, Kounelis was transferred to the front desk as a Human Resources Representative. In that role, Kounelis helped operate the front desk and maintain personnel records. Kounelis' duties included answering the telephone, completing work eligibility forms, receiving applicants for interviews, filing and monitoring personnel files and processing tuition reimbursement. In January of 1993, Davis was promoted to Director of Human Resources, and Merryll Rosenfeld ("Rosenfeld") became Kounelis' direct supervisor. Davis became Kounelis' indirect supervisor. Kounelis testified that Rosenfeld had a very condescending manner. Kounelis noted, however, that Rosenfeld was difficult with everyone.

In December of 1993, Kounelis was assigned the task of inputting employment eligibility information ("I–9" information) into the computer. The amount of I–9 training received by Kounelis is disputed. The I–9 project dealt with the immigration status of Mount Sinai's employees. Proper processing of I–9 forms was a serious concern for Mount Sinai because it could be fined $100 to $1,000 by the Immigration and Naturalization Service for each employee with expired immigration documents.

During the course of her employment with Mount Sinai, Kounelis received very favorable annual performance evaluations and regular pay raises. The generally positive performance evaluations and other memoranda prepared by Kounelis' supervisors contained some criticisms.[2] Up to and including the 1993 performance evaluation, Kounelis did not find anything discriminatory or unfair on the basis of age about the evaluations and increases in pay. Kounelis was 64 years old at the time she received the 1993 evaluation.

Kounelis turned 65 years old on January 27, 1994. Shortly after her 65th birthday, Davis asked Kounelis whether she had plans to retire.[3] Kounelis responded by stating that she planned to continue working as long as she could. Davis never stated that she wanted Kounelis to retire nor did she state that she would force Kounelis to retire. Davis did not make any negative statement regarding Kounelis' response to the inquiry about retirement. In fact, other than the retirement inquiry, Davis never made any comments to Kounelis about her age.

In an evaluation after Kounelis' 65th birthday, Kounelis was commended for her work with the I–9 project and given a better evaluation than during the prior year. In the same evaluation, however, Mount Sinai complained that Kounelis had "a tendency to phase out portions of instructions given to her for a particular project."

On another occasion, Kounelis was called into Davis' office.[4] Davis told Kounelis that people in the department noted that Kounelis appeared overmedicated. Davis inquired whether Kounelis was on any medication. Kounelis responded that she was not.

In February of 1994, Kounelis gave Davis an egg-shaped crystal box as a birthday present. After thanking Kounelis for the gift, Davis inquired whether the gift should be for Easter. From this comment, Kounelis inferred that Davis thought Kounelis was "losing it." Davis, however, never said anything about Kounelis "losing it."

In July of 1994, a recruiter told Kounelis that a particular applicant would be arriving

**2.** The Court will not review the incidents cited in the performance evaluations or in memoranda prepared by Kounelis' supervisors because those incidents did not form part of the basis for Kounelis' termination. Accordingly, the Court will simply note that Kounelis' record was generally favorable although not pristine.

**3.** In her Complaint, Kounelis alleged that Davis "suggested" that she retire. At deposition, Kounelis admitted that the statement in the Complaint was not accurate.

**4.** The date of this incident is disputed. Davis contends that it took place many years ago, but Kounelis claims that the incident took place shortly after the retirement inquiry.

for an interview. Kounelis left to lunch without informing her co-worker, Lisa Cushing ("Cushing"), about the scheduled interview. When the applicant arrived, Cushing allowed the applicant to leave without being interviewed. On July 22, 1994, Davis called Kounelis into her office and handed her a written disciplinary action for not advising Cushing of the scheduled interview.[5] Prior to this incident, Kounelis had never been given a disciplinary action. Kounelis admits that she forgot to do what she was supposed to do regarding the applicant. Kounelis states that Davis encouraged Kounelis to transfer or take medical leave. Kounelis declined to do so. A few days later, Kounelis expressed interest in the transfer option, but Davis informed Kounelis that transfer was no longer an option because Kounelis had a disciplinary action in her file.

In August and September of 1994, Kounelis underwent physical therapy for a back condition. Kounelis requested and obtained permission from Rosenfeld to attend the physical therapy during Kounelis' lunch hour. Rosenfeld required Kounelis to e-mail her before each appointment.[6]

In August of 1994, Kounelis received a second disciplinary action. The disciplinary action was based on problems which surfaced during the previous weeks including incomplete I–9 forms, incorrect immigration entries, misfiling and overpayment of tuition reimbursement. Kounelis disagreed with the disciplinary action and refused to sign it. Davis told Kounelis that her performance would have to improve 1000% or she would be fired on the spot. Kounelis had no factual basis for believing that anything other than her performance was the reason for the admonition by Davis. After the August 1994 disciplinary action, Kounelis made at least three mistakes, but her employment was not terminated.

On one occasion, Kounelis was checking the pay period during which she had taken a day off. Rosenfeld called Kounelis into her office and looked for the day off on the computer. Rosenfeld insisted that Kounelis had taken a day off. Kounelis never questioned the day off—only the pay period during which the day off was taken. Kounelis thought Rosenfeld was out of line during this incident but admitted that nothing was said about Kounelis' age.

On October 6, 1994, Kounelis' employment was terminated by Davis and Rosenfeld. During the termination meeting, Rosenfeld pointed out approximately six errors which Kounelis had committed in inputting I–9 information into the computer. At deposition, Kounelis conceded that she made errors in inputting I–9 information and stated that she had no factual basis for believing that she did not make the errors in question. At the termination meeting, Kounelis' age was never discussed.

Kounelis claims that Davis and/or Rosenfeld may have wanted a younger, fresher look at the front desk. However, Kounelis was neither told anything about a younger look at the desk nor did she have any factual basis for believing that Davis and/or Rosen-

---

**5.** In her affidavit, Kounelis states that younger co-workers turned away scheduled interviewees without being reprimanded or disciplined. At deposition, Kounelis was unable to provide a factual basis for this allegation.

To support the allegation of disparate treatment for younger co-workers who committed the same mistake, Kounelis submits a March, 1997 affidavit by Cushing. In October of 1996, however, Cushing provided an affidavit which contradicts the 1997 affidavit. For example, the 1996 Cushing affidavit states, "I have no knowledge of any facts that would indicate that any employee in Human Resources made mistakes similar in nature to those made by Ms. Kounelis for which they were not disciplined." The 1997 affidavit states that Cushing committed the same mistakes made by Kounelis but was never disciplined for them. Due to the conflicting testimony in the Cushing affidavits and in Cushing's deposition, the Court declines to consider these submissions when ruling upon the instant Motion.

**6.** There is some dispute as to inquiries regarding Kounelis' health. Kounelis claims that Davis questioned Kounelis about her physical condition, medication and therapy sessions. Davis claims that she never asked Kounelis about her health problems. Instead, Davis claims that Kounelis volunteered the information.

feld would want a younger look at the front desk. Neither Davis nor Rosenfeld ever made any direct comments to Kounelis about her age. No member of Mount Sinai management .ever made a negative comment about Kounelis' age. Kounelis could provide no facts to show that her age had anything to do with the disciplinary action in July of 1994 and August of 1994 or the decision to terminate her employment in October · of 1994. Kounelis believed the July 21, 1994 disciplinary action was unfair even though she committed the offense. Kounelis concedes that the August of 1994 disciplinary action and October 6, 1994 termination may have been deserved. Furthermore, Kounelis stated that she had no factual basis for believing that Davis and Rosenfeld did not in good faith believe that the disciplinary actions in question were justified.

## DISCUSSION·

### I. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion.· *Id.* However, the non-moving party:

> [m]ay not rest upon the mere allegations and denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Rule 56(e), Fed.R.Civ.P. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the. substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. · *Id.* at 254–55, 106 S.Ct. at 2513–14.

In addition, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. · 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

### II. Discrimination Claims

 In an unlawful discharge age discrimination case, the plaintiff must ultimately prove by a preponderance of the evidence

that age was a determining factor in the employer's decision to terminate the plaintiff. *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir.1993). Initially, however, a plaintiff must establish a prima facie case of discrimination. *Id.; Trumbull v. Health Care and Retirement Corporation of America,* 756 F.Supp. 532, 536 (M.D.Fla.1991), *aff'd* 949 F.2d 1162 (11th Cir.1991) (addressing claims under the ADEA and FCRA (formerly the Florida Human Rights Act)). A plaintiff can make a prima facie case of age discrimination through three separate means: (1) by direct evidence of discriminatory intent; (2) by statistical proof of a pattern and practice of discrimination; and (3) by use of the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Equal Employment Opportunity Commission v. Kloster Cruise Limited,* 897 F.Supp. 1422, 1425 (S.D.Fla.1995). Kounelis is proceeding under the third option, the *McDonnell Douglas* burden-shifting test. *See* Kounelis' Memorandum in Opposition to Defendant's Motion for Summary Judgment at p. 16. Under the *McDonnell Douglas* test, as modified for ADEA cases, Kounelis must show the following: (1) she is over the age of forty, (2) adverse employment action was taken against her, (3) she was qualified for the position from which she was discharged and (4) she was replaced by a younger person. *Elrod v. Sears, Roebuck and Company,* 939 F.2d 1466, 1469–70 (11th Cir.1991).

■ For purposes of the instant Motion, Mount Sinai concedes that Kounelis has made out a prima facie case of age discrimination under the *McDonnell Douglas* test. *See* Mount Sinai's Memorandum of Law at p. 6. As to the first and second prongs of the *McDonnell Douglas* test, Mount Sinai concedes that Kounelis was 65 years old when she was discharged. As to the third prong, Kounelis had satisfactorily performed her job duties during the thirteen years of employment with Mount Sinai and prior to the unsatisfactory performance which allegedly resulted in her discharge. Evidence that a plaintiff has performed job responsibilities for several years without complaint may be used to establish that a plaintiff was qualified for a position. *Baker v. Sears, Roebuck & Co.,* 903 F.2d 1515, 1520 (11th Cir.1990). Finally, as to the fourth prong of the burden-shifting method, Mount Sinai concedes that Kounelis was replaced by someone outside the protected age group.

The Court's inquiry merely begins with the establishment of the prima facie case. Once a plaintiff makes out a prima facie case of age discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Clark,* 990 F.2d at 1227. To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact to rationally conclude that the adverse employment decision was not motivated by discriminatory animus. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3171 (U.S. July 28, 1997). If the defendant is able to meet this obligation, the burden shifts back to the plaintiff to prove that the defendant's asserted reasons for the adverse action are pretextual. *Clark,* 990 F.2d at 1227.

■ Mount Sinai has met its burden of articulating a legitimate, nondiscriminatory reason for discharging Kounelis. Mount Sinai claims that Kounelis was discharged for making input mistakes with the I–9 immigration information.[7] An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate, nondiscriminatory reason for termination. *Id.* at

---

7. For purposes of ruling on the Motion, the Court will only consider Kounelis' mistakes with the I–9 information as the reasons proffered for her discharge. At Kounelis' termination meeting, the I–9 problems were the only errors cited as a basis for termination. The Court agrees with Kounelis that Mount Sinai is now seeking to introduce misplaced files and incorrect tuition reimbursements to support its adverse employment decision. As those problems were not mentioned to Kounelis at the time of her discharge, they will not be considered by the Court in determining whether Mount Sinai set forth legitimate, nondiscriminatory reasons for discharging Kounelis.

1228. As discussed above, the I-9 project concerned the immigration status of Mount Sinai's employees. Proper processing of I-9 forms was a legitimate concern for Mount Sinai because it could be fined for employing persons with expired immigration documents. In the record, Mount Sinai has pointed to specific instances of errors committed by Kounelis regarding the I-9 project. In addition, Kounelis has conceded that the mistakes were made. Accordingly, the Court concludes that Mount Sinai has met its burden of setting forth a legitimate, nondiscriminatory reason for discharging Kounelis.

■ The burden shifts back to Kounelis. To avoid summary judgment, Kounelis must introduce "significantly probative evidence" that Mount Sinai's reasons for terminating Kounelis were pretexts for discrimination. *Id.; Kloster Cruise,* 897 F.Supp. at 1428. As pointed out by the Eleventh Circuit in *Clark,* the burden of proving pretext merges with the plaintiff's ultimate burden of proving that age was a determining factor in the discharge. *Clark,* 990 F.2d at 1228. Pretext may be established directly by producing evidence that a discriminatory reason more likely motivated Mount Sinai or indirectly by showing that Mount Sinai's proffered explanation is unworthy of credence. *Id.* Kounelis has opted to discredit Mount Sinai's proffered explanation for the termination.

At this stage, the Court must evaluate whether Kounelis can demonstrate "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs,* 106 F.3d at 1538.[8] After reviewing all evidence in the light most favorable to Kounelis, the Court concludes that Kounelis has failed to cast sufficient doubt on Mount Sinai's prof-

fered nondiscriminatory reasons to permit a reasonable factfinder to conclude that Mount Sinai's proffered reasons for terminating Kounelis did not motivate its conduct.

■ Perhaps the most significant fact, if not the only fact, that Kounelis can point to in attempting to establish that Mount Sinai's proffered explanation is unworthy of credence is Ms. Davis' inquiry regarding Kounelis' retirement plans.[9] It is undisputed that shortly after Kounelis' 65th birthday, Ms. Davis, Kounelis' indirect supervisor, inquired as to Kounelis' retirement plans. It is also undisputed that Kounelis stated that she would continue to work. Nothing else was said by either party regarding retirement. The Court agrees with the First Circuit's holding that a single inquiry by an employer as to an employee's retirement plans does not necessarily show animosity towards age. *Greenberg v. Union Camp Corporation,* 48 F.3d 22, 28 (1st Cir.1995). An employer may legitimately inquire about an employee's retirement plans so that it can prepare to meet its hiring needs. *Id.* Repeated or coercive inquiries, however, can clearly give rise to a reasonable inference of an anti-age bias. *Id.* Kounelis testified at deposition that the inquiry by Davis was the only inquiry regarding Kounelis' retirement plans. From that isolated inquiry, the Court cannot infer discriminatory animus sufficient to call into question Mount Sinai's proffered reasons for discharge.

Kounelis also points the Court to the favorable April 20, 1994 performance evaluation as a basis for finding that Mount Sinai's nondiscriminatory reasons for discharge are not worthy of credence. It is undisputed that the 1994 performance evaluation, given to Kounelis when she was 65 years old, was a favorable one. However, the fact that Kounelis performed favorably in April does not

---

**8.** Although *Combs* dealt with a Rule 50 motion, the Eleventh Circuit stated that Rule 56 motions and Rule 50 motions both deal with judgment as a matter of law—either before the trial begins or after—and noted that the Supreme Court of the United States in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986), stated that the inquiry

under each is the same. *Combs,* 106 F.3d at 1534.

**9.** The Court finds that the retirement inquiry is the only fact in the record which addresses Kounelis' age.

make it implausible or inconsistent for Kounelis to perform unsatisfactorily in September or October of the same year. It is helpful to once again note that Kounelis does not dispute that she committed the I-9 errors in question.

In an attempt to avoid summary judgment, Kounelis asks the Court to consider the "tender[ed] record evidence of Ms. Rosenfeld's and Ms. Davis' comments that belied their discriminatory animus towards Kounelis." First, Kounelis falls short of providing the Court with such record evidence. General references to "Davis deposition" and "Rosenfeld deposition," without more, do not provide the Court with the evidence needed to oppose the summary Judgment motion or to render Mount Sinai's legitimate, nondiscriminatory reasons for discharge unworthy of credence. Second, the reference to documents setting forth deficiencies in Kounelis' employment does not discredit Mount Sinai's proffered reasons for terminating Kounelis but, instead, buttresses the performance-based reasons for dismissal.

As discussed above, there are undisputed facts from which Kounelis inferred discriminatory comments about her age. For example, Kounelis perceived Davis' comment about the birthday present as implying that Kounelis was "losing it." In addition, Kounelis subjectively felt that Davis and Rosenfeld wanted a fresher, younger look at the front desk of the human resources department. Also, Kounelis inferred a comment about age from Davis' inquiry regarding overmedication.[10] At deposition, Kounelis was unable to point to facts supporting her belief that these comments or perceptions were age-based. These conclusory allegations of age discrimination, based exclusively on Kounelis' subjective beliefs, do not suffice to overcome Kounelis' burden of rebutting the non-discriminatory reasons for termination set forth by Mount Sinai. *See Avril v. Village South, Inc.*, 934 F.Supp. 412, 417 (S.D.Fla.1996); *Martin v. Ryder Distribu-*

*tion Resources, Inc.*, 811 F.Supp. 658, 664 (S.D.Fla.1992), *aff'd*, 16 F.3d 1232 (1994).

## CONCLUSION

As the Court has noted on previous occasions, a federal court does not serve as a super-personnel office that reexamines an employer's business decisions, regardless of how harsh the Court perceives them to be. *Id.* In the case before the Court, Mount Sinai has stated legitimate, nondiscriminatory reasons for terminating Kounelis. Kounelis has failed to produce significantly probative evidence which would cast doubt on Mount Sinai's proffered reasons. Accordingly, summary judgment is proper and Mount Sinai's Motion is hereby GRANTED as to the ADEA and FCRA counts.

---

**10.** Again, the Court points out that the time frame of the overmedication incident is disputed. However, even if the Court accepts Kounelis' chronology for purposes of this Motion, there is still no record evidence, other then Kounelis' perception, that the inquiry was related to age.